*F. K. McCutchen,* contra.

---

### GEORGIA-CAROLINA LUMBER COMPANY v. WRIGHT, comptroller-general, et al.

Section 44 of the general tax act of December 19, 1923, as amended by the act of August 18, 1924 (Acts 1924, pp. 22, 25), which imposes a tax upon dealers in coal, coke, wood, and lumber, is not unconstitutional and void because it violates the commerce clause of the Federal constitution, or the uniform-tax provision of the State constitution.

No. 4908. NOVEMBER 14, 1925. REHEARING DENIED JANUARY 16, 1926.

Equitable petition. Before Judge Malcolm D. Jones. Bibb superior court. April 24, 1925.

*E. F. Goodrum* and *E. C. Collins,* for plaintiffs.

*George M. Napier, attorney-general, T. R. Gress, assistant attorney-general,* and *E. B. Weatherly,* for defendants.

· HINES, J. Section 44 of the general tax act of December 19, 1923, as amended by the act of August 18, 1924, levies "Upon each person, firm, or corporation dealing in coal, coke, wood, or lumber, . . whether for themselves or as agents or as brokers, in cities of more than 1,000 inhabitants, and not more than 10,000, $10.00;

in cities of more than 10,000 and not more than 20,000 inhabitants, $50.00; in cities of more than 20,000 inhabitants, $100.00; Provided, That dealers in wood only shall pay a tax of $10.00. Said tax payable for each place of business." Acts 1924, pp. 22, 25. The plaintiffs filed their petition to enjoin the defendants, who by law are the officers charged with its collection, from collecting said tax. They allege that they are engaged in the wholesale lumber business. They buy lumber in wholesale quantities from manufacturers in this State, for sale and shipment to purchasers and consumers in other States and at other points beyond the limits of this State. They are not engaged in intrastate business, but are engaged wholly in the conduct of interstate commerce, in that the lumber so handled by them is shipped directly from the mills of the manufacturers in this State to their customers in other States and in foreign parts. Plaintiffs sought to enjoin the collection of said tax, on the grounds: (1) that it violated the interstate-commerce clause of the constitution of the United States; (2) that said section of said act is ambiguous; and (3) "that said act is not uniform, and is therefore illegal and void, in that the same fails to impose a similar tax upon dealers of the same class in any incorporated town and city in the State, . . by failing to impose any tax upon such occupation or business in towns or cities of less than 1,000 inhabitants, and upon such occupation and business outside of cities and towns of" this State; and therefore that it violates art. 7, sec. 2, par. 1, of the constitution of this State, which provides that "All taxation shall be uniform upon the same class of subjects." The defendants demurred to the petition, on the ground that it did not set out a cause of action. The court below sustained the demurrer and dismissed the petition. To this judgment the plaintiffs excepted.

1. Does this tax impose a burden on interstate commerce, and is it thereby rendered unconstitutional and void because in conflict with the commerce clause of the Federal constitution? Manufacture is not commerce. Kidd *v.* Pearson, 128 U. S. 1 (9 Sup. Ct. 6, 32 L. ed. 346); U. S. *v.* E. C. Knight Co., 156 U. S. 1 (15 Sup. Ct. 249, 39 L. ed. 325); Capital City Dairy Co. *v.* Ohio, 183 U. S. 238 (22 Sup. Ct. 120, 46 L. ed. 171); McCluskey *v.* M. & N. Ry. Co., 243 U. S. 36 (37 Sup. Ct. 374, 61 L. ed. 578); Hammer *v.* Dagenhart, 247 U. S. 251 (38 Sup. Ct. 529, 62 L. ed. 1101, 3 A.

L. R. 649, Ann. Cas. 1918E, 724) ; Arkadelphia Milling Co. *v.* St. Louis Southwestern Ry. Co., 249 U. S. 134 (39 Sup. Ct. 237, 63 L. ed. 517) ; Crescent Cotton Oil Co. *v.* Mississippi, 257 U. S. 129 (42 Sup. Ct. 42, 66 L. ed. 166). The fact, of itself, that an article when in the process of manufacture is intended for export to another State does not render it an article of interstate commerce. Coe *v.* Errol, 116 U. S. 517 (6 Sup. Ct. 475, 29 L. ed. 715) ; N. Y. C. R. Co. *v.* Mohney, 252 U. S. 152 (40 Sup. Ct. 287, 64 L. ed. 502, 9 A. L. R. 496). Crescent Oil Co. *v.* Mississippi, supra. So the mining of ore, even when all of the ore mined is intended to be immediately and continuously loaded on cars and shipped into other States to satisfy existing contracts, is not interstate commerce, and is subject to local taxation. Heisler *v.* Thomas Colliery Co., 260 U. S. 245 (43 Sup. Ct. 83, 67 L. ed. 237) ; Oliver Iron Mining Co. *v.* Lord, 262 U. S. 172 (43 Sup. Ct. 526, 67 L. ed. 929). Ores mined and goods manufactured in one State for shipment and sale to customers in other States do not enter interstate commerce until after they are mined or manufactured, and commence their final movement of transportation from the State of their origin to that of their destination. Coe *v.* Errol, supra ; Heisler *v.* Thomas Colliery Co., supra. So lumber, purchased by wholesale dealers from sawmills within this State, for shipment and sale to customers in other States and in foreign countries, does not enter interstate commerce until after it is purchased and is actually delivered to a common carrier for transportation, or the actual commencement of its transfer to another State is begun. In Re Greene, 52 Fed. 113 ; Coe *v.* Errol, supra ; Bacon *v.* Illinois, 227 U. S. 504 (33 Sup. Ct. 299, 57 L. ed. 615). If lumber so purchased, although intended by the dealers for shipment and sale to customers or purchasers in other States, is subject to taxation, it follows that the State can impose upon such dealers an occupation tax. Such occupation tax, if it affects interstate commerce in any way, does so incidentally and so remotely as not to amount to a regulation of such commerce, and the statute imposing it is not unconstitutional and void because it interferes with interstate commerce. Woodruff *v.* Parham, 8 Wallace, 123 (19 L. ed. 382) ; Ficklen *v.* Shelby County Taxing District, 145 U. S. 1, 21 (12 Sup. Ct. 810, 36 L. ed. 601) ; *Wallon* v. *Augusta,* 104 *Ga.* 757 (30 S. E. 964). To hold otherwise would permit dealers to invest all

their funds in property, which they intend to sell and ship to customers in other States, and thus prevent the State which protects their lives and property from making them contribute a single farthing to support its government. Woodruff *v.* Parham, supra. If it were otherwise, all manufacture intended for interstate shipment would be brought under Federal control, to the practical exclusion of the authority of the State, a result which was not contemplated by the framers of the constitution when they vested in Congress the power to regulate commerce among the States. Kidd *v.* Pearson, supra.

What we rule above is not in conflict with the decisions of the Supreme Court of the United States, in Lemke *v.* Farmers Grain Co., 258 U. S. 50 (42 Sup. Ct. 244, 66 L. ed. 458) ; Stafford *v.* Wallace, 258 U. S. 495 (42 Sup. Ct. 397, 66 L. ed. 735, 23 A. L. R. 229) ; Binderup *v.* Pathe Exchange, 263 U. S. 291 (44 Sup. Ct. 96, 68 L. ed. 308) ; Shafer *v.* Farmers Grain Co., 268 U. S. 189 (45 Sup. Ct. 481, 69 L. ed. 909). The import of these cases is fully disclosed by a brief consideration of the last-cited case. In that case the Supreme Court of the United States held that buying goods for shipment and shipping to markets in other States constitutes interstate commerce, and that legislation restricting and imposing burdens upon this right to buy for shipment and to ship imposed burdens upon interstate commerce and rendered such legislation violative of the commerce clause of the Federal constitution. In those cases the burdens imposed upon the right to buy and ship goods from one ·State into another State were direct burdens. The Supreme Court of the United States was not dealing with indirect burdens, such as storage charges for grain in warehouses where a part of the grain reached the elevator, or was destined to leave it, through the channels of interstate commerce. Munn *v.* Illinois, 94 U. S. 113 (24 L. ed. 77). That court held such a regulation admissible because interstate commerce was affected only incidentally and remotely, and no restriction on buying and shipping was involved. See Cargill Co. *v.* Minnesota, 180 U. S. 452 (21 Sup. Ct. 423, 45 L. ed. 619) ; Merchants Exchange *v.* Missouri, 248 U. S. 365 (39 Sup. Ct. 114, 63 L. ed. 300) ; Shafer *v.* Farmers Grain Co., supra. So we are of the opinion that wholesale lumber dealers, doing business in the cities of this State, who buy lumber in wholesale quantities from manufacturers in this State for sale and

shipment to purchasers and customers in other States and foreign countries, and who do not sell to customers within this State, can be required by this State to pay an occupation tax on such business; and that the above statute of this State, imposing such tax upon such dealers, is not unconstitutional and void because it violates the commerce clause of the Federal constitution.

2. Does this statute violate art. 7, sec. 2, par. 1, of the constitution of this State, which declares that "All taxation shall be uniform upon the same class of subjects"? A graduated occupation tax, based on the population of each county or city in which the business is carried on, does not violate this clause of the constitution. *Adams Motor Co.* v. *Cler,* 149 *Ga.* 818 (102 S. E. 440); *Richardson* v. *Barclay & Brandon,* 155 *Ga.* 331 (116 S. E. 807). The fact that no tax is imposed on country dealers, and on dealers in cities of less than 1,000 inhabitants, does not render this statute obnoxious to the above provisions of the constitution. A classification of lumber dealers for the purpose of taxation into country and city dealers is not unreasonable and arbitrary; and the fact that no tax is imposed on the country dealers, but is imposed upon city dealers, does not violate this provision of the constitution. *Wright* v. *Hirsch,* 155 *Ga.* 229 (116 S. E. 795).

Classification based upon the population of territorial divisions is one of the commonest forms of classification; and such classification has met the approval of this court in a number of cases. So we held that the act of August 13, 1924 (Acts 1924, p. 87), which provides for putting county officers upon salaries in counties in this State, which had by the census of 1920, or which may have by any future census, a population of 200,000 inhabitants or more, did not violate the provision of the State constitution requiring general laws to have uniform operation throughout the State. *Abbott* v. *Commissioners,* 160 *Ga.* 657 (129 S. E. 38). This section of the general tax act in effect classifies dealers in the commodities therein specified into several classes. One of these classes embraces dealers in cities of less than 1,000 inhabitants; and does not impose upon dealers in this class any occupation tax. It is well settled that the legislature can classify occupations and impose an occupation tax upon members of one class and not on those of another class. It next classifies dealers in cities having more than 1,000 inhabitants and not more than 10,000 inhabitants. It imposes

an occupation tax upon all members of this class.  It next classifies dealers in cities of more than 10,000 inhabitants and not more than 20,000 inhabitants, and imposes a higher occupation tax upon all members falling within this class.  It next classifies dealers in cities of more than 20,000 inhabitants, and imposes a still larger occupation tax upon all members coming within this class.  It classifies dealers in wood, and imposes upon all members falling within this class a given occupation tax.  It does not impose any tax upon dealers outside of cities.  There is some ground and reason to support this classification.,  Such reason is obvious and does not need elaboration.  This being so, and the tax imposed being uniform upon each member of each class embraced in this act, we do not think it violates the above provision of the State constitution.        *Judgment affirmed.  All the Justices concur, except*

ATKINSON and HILL, JJ., dissenting.  For the reasons stated in the dissenting opinion in the case of *Wright* v. *Hirsch,* 155 *Ga.* 229 (supra), we dissent from the ruling announced in the second headnote and the corresponding division of the opinion.