ABRAHAM DIKEL, Appellant, v. VIVIAN MATHERS, Appellee.

No. 40755.

OCTOBER 27, 1931.

Baron & Bolton and Jepson, Struble & Sifford, for appellant.

Robert B. Pike and Larned F. Brown, for appellee.

KINDIG, J.—At about seven o'clock in the evening on June 1, 1930, Abraham Dikel, the plaintiff-appellant, was driving his Nash automobile south on MacDonald Street in Sioux City, while the defendant-appellee, Vivian Mathers, was operating his Chevrolet coupe northwesterly on Stone Park Boulevard, an intersecting thoroughfare. A collision occurred when the two cars met at the intersection.

MacDonald Street extends north and south and intersects with Stone Park Boulevard, which, as before indicated, is a street running in a southeasterly and northwesterly direction. Although these two streets thus intersect, MacDonald Street does not continue south of Stone Park Boulevard.

By an ordinance, the City of Sioux City declared Stone Park Boulevard to be an arterial highway, as provided by section 4995 of the 1927 Code. There was a stop sign duly placed on MacDonald Street several feet north of Stone Park Boulevard.

Various grounds of negligence were alleged by appellant in his petition, wherein damages were sought against the appellee. Likewise, the appellee set forth many grounds of negligence in his cross-petition, wherein he demanded damages from appel-

lant. One ground of negligence claimed by appellee was that appellant did not stop on MacDonald Street before entering Stone Park Boulevard, as required by law, at the "stop sign" immediately north of the boulevard. This allegation appellant denied, and he further claimed that appellee was negligent in not giving him the right of way at the place in question. The right of way here was claimed by appellant under section 5035 of the 1927 Code, because the appellee approached at his left. Each litigant alleged that the other was driving at an excessive speed.

After a hearing in the district court, the jury returned a verdict on the counterclaim, in appellee's favor, for $18,000. Later the verdict was reduced by the district court to $9353.00. Appellant asked a rehearing because: First, the district court did not direct a verdict in appellant's favor on the matters relating to appellee's counterclaim; second, the district court improperly submitted the issues to the jury, especially on the question of who had the right of way at the intersection; and, third, of many other matters which, under the disposition here made of the case, do not become material.

I. It is apparent from the record that the district court properly allowed the jury to pass upon appellee's negligence under appellant's petition, and the latter's negligence on the former's counterclaim. So, too, the district court correctly permitted the jury to pass upon appellant's contributory negligence under the case set forth in his petition, and appellee's contributory negligence on the issues raised in his counterclaim.

No specific reference is made to the various statements of the many witnesses and the facts and circumstances surrounding the case, for the reason that there is to be a retrial on account of the error hereafter considered.

Consequently, out of fairness to each litigant, the matters relating to the alleged negligence and contributory negligence will not be further discussed.

II. As before indicated, appellant seriously complains because the district court improperly instructed the jury concerning the right of way on the respective highways at the time and place in question.

During its charge, the trial court told the jury in instruction eight:

"You are further instructed that all motor vehicles traveling on Stone Park boulevard from the east line of Perry Creek to the intersection of 27th street, so designated as a boulevard, shall have right of way over all other vehicles approaching or traveling upon all streets intersecting said designated boulevard."

Again in paragraph eighteen of the instructions the same thought is expressed to the jury. Many variations of the thought are elsewhere set forth in the instructions, sometimes to the extent of becoming conflicting.

An attack is made upon the foregoing instruction by the appellant on the theory that it does not correctly set forth the law applicable to the case. In other words, appellant contends that the appellee, although on the boulevard, did not necessarily have the right of way. His thought at this point is that the appellant, after duly stopping on MacDonald Street at the Boulevard sign, had a right thereafter to carefully proceed into Stone Park Boulevard. When so doing, appellant contends that under section 5035 of the 1927 Code, he had the right of way over appellee then on the boulevard, for the reason that the latter was at the former's left a distance contemplated by the said statute. Section 5035 of the 1927 Code provides:

"Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way * * *."

Continuing his argument, appellant asserts that the foregoing section is not overcome by the city ordinance, passed under authority of section 4995 in the same Code. That section contains the following:

"Local authorities of any city or town may also: * * *

"5. Designate certain streets as boulevards or arterial highways and to provide that vehicles entering such street from intersecting streets shall come to a full stop before such entrance.

"The city or town shall keep placed conspicuously at each point where a street or highway intersects such designated boulevard or arterial highway, a sign bearing the words 'STOP, BOULE-

vard' of sufficient size to be easily readable at a distance of one hundred feet by a person using such street or highway.''

Under the provisions of that statute, Sioux City passed Ordinance Number O-1805, section 55 of which is to this effect:

''The following streets in the City of Sioux City are hereby declared and designated as boulevards and arterial highways, and every vehicle entering such streets from intersecting streets shall come to a full stop before such entrance: * * * (d). Stone Park boulevard from the east line of Perry Creek Road to intersection of Twenty-seventh street.''

Such ordinance adopted under the foregoing legislation, appellee asserts, fully justifies the district court's instruction. Notwithstanding the ordinance and the statute under which it was passed, the appellant, on the other hand, complains of the instruction for the reasons previously indicated. Who is right? The answer can only be found by a careful study of the statutes together with the authorities upon the subject.

Section 4995, above quoted, is in the same chapter with section 5035. Therefore, if possible, the one section must be harmonized with the other. Neither is apparently intended to overcome the other. While section 4995 authorizes the city to designate a boulevard and require travelers on intersecting streets to stop, yet, in no other way does that section purport to overcome or limit section 5035. Of course, a traveler on the boulevard has a right to expect an operator of a motor vehicle on the intersecting street to stop at the sign. With that expectation in mind, the operator of the automobile on the boulevard can proceed forward while the other traveler on the intersecting street stops at the sign. After a stop has been made at the sign on the intersecting street, however, that operator of the vehicle has a right to carefully approach and enter the intersection, and other travelers who at that later time are likewise proceeding toward the intersection must observe the right of way rule, as set forth in section 5035, above quoted. Under the rules announced in that section, the respective travelers must determine who has the right of way.

Recently the Supreme Court of Nebraska had reason to discuss somewhat similar statutes. Upon that occasion, the

Nebraska Court said, in McCulley v. Anderson, 227 N. W. (Neb.) 321, reading on pages 324 and 325:

*"With the exception of a required stop at an arterial highway, the principles of law applicable thereto as to right of way privileges are the same as those which apply to other streets."* (The italics are ours).

Also the question has lately been considered by the Minnesota Supreme Court. During the discussion, that court declared, in Bell v. Pickett, 227 N. W. (Minn.) 854, reading on page 855:

*"This stop rule is part of the same section as the right of way rule and is to be construed therewith.* (The italics are ours). * * * If a driver, knowing the through street and that signs are there, enters such street without stopping, he can claim no benefit from the right of way rule. *If he does stop and thereafter exercises due care in entering the through street, he then has the benefit of the right of way rule."* (The italics are ours).

Hence, in the case at bar, if appellant stopped, as he claims he did, at the sign on MacDonald Street, and then carefully and prudently proceeded forward, Section 5035, supra, must control the conflicting rights to the way which may arise between him and a then oncoming car from his left. This is true, because, as said in the Nebraska and Minnesota cases, the boulevard stop statute and the right of way statute in the same chapter must be construed together.

Obviously the legislature did not say in express language that a city by designating a boulevard could confer upon the travelers thereon the right of way on all occasions over car operators approaching from intersecting streets. A stop, of course, must be made at the place designated on the intersecting street, but after that duty has been performed and the traveler proceeds cautiously forward into the intersection, there is no reason why another operator of an automobile approaching the same intersection at the boulevard should not be controlled by section 5035, supra. The matter of right of way is determined by statute, unless the city has passed a duly authorized ordinance overcoming the statutory mandate. No such ordinance was adopted in Sioux City, so far as the record shows. Whether or

not a municipality has power to change the right of way rule fixed in the statute is not now decided or suggested. Whenever the legislature intended a traveler on an arterial highway to have the right of way over intersecting roads and streets, there has been a plain declaration accordingly. To illustrate, section 5079-d1 of the 1931 Code provides:

"County trunk roads *outside of cities and towns* are hereby designated as arterial highways." (The italics are ours).

Supplementing the foregoing is section 5079-d2, which reads in this way:

"The traffic on such arterial highways shall have the right of way over the traffic on any local county road intersecting therewith. At the intersection of said arterial highways, the county board of supervisors shall determine by the erection of signs, which traffic shall have the right of way."

Again, the legislature declared in section 5079-b1, of the same Code:

"Primary roads, and extensions of primary roads within cities and towns are hereby designated as arterial highways."

Completing the regulation, the legislature further declared in section 5079-b2 of that Code:

"The traffic on such arterial highways shall have the right of way over the traffic on any other highway, street or alley intersecting therewith. At the intersection of two arterial highways the state highway commission shall determine which traffic shall have the right of way."

Following that, in section 5079-b3, there is this legislation:

"At intersections of side roads, streets and alleys with arterial highways the traffic on the side roads, streets and alleys shall come to a stop before entering upon the arterial highway, or may proceed cautiously without coming to a stop as the state highway commission may determine."

Manifestly the legislature was not content to provide that mere stop signs should be placed along state or county arterial highways. There is a provision for stop and slow signs. But

the legislature did not consider that enough to settle the question of right of way. In order, then, to overcome the provisions of section 5035 of the 1927 Code, supra, the legislature, in sections 5079-b2 and 5079-d2 of the 1931 Code, expressly declared where the right of way should be. Such express declaration is a striking contrast to the mere stop sign authority given to cities under section 4995 of the 1927 Code. Had the legislature desired the city by ordinance, under the authorization contained in section 4995, supra, to overcome the right of way rule set forth in section 5035, supra, there would have been express language to that effect. Because when that end was desired for state primary roads, the extension of primary roads in cities, and county trunk roads, the thought was most clearly expressed in sections 5079-b2, 5079-b3, and 5079-d2 of the 1931 Code (same in 1927 Code, so far as material). Until the legislature clearly intends that the right of way rule provided in section 5035, supra, is to be overcome by the provisions of section 4995, supra, we cannot presume that the traveler on the arterial highway has the exclusive right of way upon all occasions.

 All the foregoing sections in the one chapter must be read in a way that will make each consistent and harmonious with the other, and carry out the clear intention of the legislature. Evidently, whenever the legislature desired the right of way rule set forth in section 5035, supra, to be overcome, it expressly so said, as indicated by the illustrations above set forth. So, until the legislature declares that section 4995 of the 1927 Code is to overcome the right of way rule contained in section 5035, of that Code, this court cannot supply the legislation. By this declaration it is not intended that the traveler on the intersecting street has any license to ignore the stop sign. What is here said relates to the case where he has obeyed the stop sign and then carefully and prudently proceeded toward the intersection. Plainly the district court did not instruct the jury according to this theory, and that body was presumably misled. Especially is this so in reference to the appellee's negligence and contributory negligence. Prejudice obviously arose.

Wherefore, because of the error pointed out, the appellant is entitled to a new trial, and the judgment of the district court should be and hereby is reversed.—Reversed.

FAVILLE, C. J., and STEVENS, DE GRAFF, MORLING, and WAGNER, JJ., concur.

EVANS, J., dissents.

GRIMM, J. (dissenting).—Unless the legislature intended that the driver on the boulevard has the right of way, the statute is of no force or effect.

I am authorized to say that Justices Evans and Albert join in this dissent.