A10A1741. DAWKINS & SMITH HOMES, LLC et al.
v. LOWNDES COUNTY, GEORGIA et al.
(701 SE2d 544)

BLACKBURN, Senior Appellate Judge.

In this declaratory judgment action concerning a zoning issue, plaintiffs Dawkins & Smith Homes, LLC ("DSH") and 13 other parties appeal the order denying them summary judgment and granting summary judgment to defendants Lowndes County and its zoning administrator. DSH, which owned certain property on which it had granted easements to the other 13 appellants, argues that the trial court should have declared that the use of those easements over its property to access a lake did not violate the county zoning ordinance, or that the easements were in lawful existence prior to the enactment of the zoning ordinance. We agree with the trial court that the use of the easements over DSH's property were not accessory uses of that property and therefore violated the zoning ordinance. We further agree that the easements were undisputably created *after* the zoning ordinance was enacted. Accordingly, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

The evidence is undisputed on the material facts. In 2003 and 2004, DSH (a developer) purchased 14 neighboring lots, which lots were numbered Lots 1 through 13 and Lot 15. Lot 15 had a boat ramp allowing access from the street to the lake at its rear. Pursuant to Lowndes County's 1984 zoning ordinance, DSH petitioned the county to allow Lot 15 to serve as a common area for Lots 1-13, which petition the county denied. DSH then started selling lots to the other 13 parties in February 2005, closing on Lots 2, 8, 10, 11, 12, and 13 before the 1984 ordinance was replaced with a new ordinance in May 2006. Thereafter, from March 2007 through September 2007, DSH sold the remaining lots. In addition to conveying title to a lot,

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459, 459 (1) (486 SE2d 684) (1997).

DSH in each deed also granted to the grantee a perpetual easement over Lot 15, allowing the grantee and its successors to use the boat ramp over Lot 15 for pedestrian and vehicle access to the lake. The easement was appurtenant to the lot being conveyed.

Following complaints from the surrounding community, the county informed the 13 landowners[2] in December 2007 that their use of the easements over Lot 15 was prohibited by the county zoning ordinance. Three months later, the 13 landowners and DSH filed the present action against the county and its zoning administrator, seeking a declaratory judgment that the 13 landowners' use of their respective easements was lawful under the zoning ordinance. After both sets of parties moved for summary judgment, the trial court denied the landowners' motion and entered summary judgment in favor of the county.

1. The key to this case is whether the zoning ordinance (whether in its 1984 or 2006-permutation) prohibited the landowners' use of their easements over Lot 15. The landowners correctly argue that zoning statutes must be strictly construed in favor of the property owner. See *Bo Fancy Productions, Inc. v. Rabun County Bd. of Commrs.*[3] "But zoning ordinances also must be given a reasonable construction." (Punctuation omitted.) *Rock v. Head.*[4] "[T]he construction of a zoning ordinance is a question of law for the courts," *Stanfield v. Glynn County,*[5] and we therefore review the trial court's ruling in this regard de novo. See *Weaver v. State of Ga.*[6]

The 1984 ordinance and its 2006 successor were not substantively different with regard to the issue in this case. Both ordinances prohibited any use of a property, which use was not expressly allowed by the ordinance for the classification of the property at issue. Lot 15's R-TL classification in the 1984 ordinance and its R-10 classification in the 2006 ordinance allowed the lot only to be used for a single-family residence and for any accessory uses thereto. Although "accessory use" was not expressly defined in the 1984 ordinance, the 2006 ordinance defined such as a use "which is incidental and subordinate to the principal use or structure." Regarding zoning ordinances, Black's Law Dictionary defines "incidental use" as "[l]and use that is dependent on or affiliated with the land's primary use." Black's Law Dictionary, p. 1540 (7th ed. 1999). This definition

---

[2] A few of these landowners were successors-in-interest to the parties to whom DSH had originally conveyed the lots.

[3] *Bo Fancy Productions, Inc. v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 342 (1) (a) (478 SE2d 373) (1996).

[4] *Rock v. Head*, 254 Ga. App. 382, 386 (2) (562 SE2d 768) (2002).

[5] *Stanfield v. Glynn County*, 280 Ga. 785, 786 (2) (631 SE2d 374) (2006).

[6] *Weaver v. State of Ga.*, 299 Ga. App. 718, 721 (2) (683 SE2d 361) (2009).

is entirely consistent with the Georgia Supreme Court's 1976 interpretation of "accessory use" as an incidental use that is "dependent on or pertain[ing] to the principal or main use." (Punctuation omitted.) *Guhl v. Par-3 Golf Club, Inc.*[7] (interpreting DeKalb County's zoning ordinance where "accessory use" was not defined in the ordinance).[8] Cf. *Bo Fancy Productions*, supra, 267 Ga. at 343 (1) (b) (Supreme Court's own use of the word "incidental" throughout its zoning opinion clearly referred to such as being dependent on or pertaining to the main use of the land).

Here, the easements granted by DSH as the owner of Lot 15 were not incidental and subordinate to the primary use of Lot 15 as a single-family residence. The 13 owners of nearby properties received perpetual, irrevocable easements permitting them and their successors to use Lot 15 without permission of the current or any future residents of the house on the lot. Their easements to use the boat ramp to access the lake were appurtenant to their own properties and were not dependent on and did not pertain to the primary use of Lot 15 as a single-family residence. Indeed, the ownership of Lot 15 and the other landowners' rights to an easement over that property were "independent of each other." *Donalson v. Ga. Power & Light Co.*[9] This is entirely distinguishable from a family, who is using Lot 15 as a single-family residence, giving revocable, temporary permission to friends and family to periodically cross Lot 15 to access the lake, as the use then could be seen as incidental to the family's use of the lot as a single-family residence. The county even conceded that such a limited use was permissible under the ordinances. However, the issue before the trial court (and before us) was whether the use of the easements to access the lake over Lot 15 was a permitted accessory use under the zoning ordinances. Such a use via a permanent easement was not incidental and subordinate to the primary use of Lot 15 as a single-family residence, and we therefore must agree with the trial court's analysis and conclusion finding that the use of these easements violated both zoning ordinances.

2. The landowners nevertheless argue that this use of Lot 15's boat ramp to access the lake predated the zoning ordinances and therefore was a lawfully-established pre-existing use that was grand-

---

[7] *Guhl v. Par-3 Golf Club, Inc.*, 238 Ga. 43, 46 (2) (231 SE2d 55) (1976).

[8] We reject the landowners' argument that the ordinances' definition of "accessory building" limits the meaning of "accessory use." "Accessory buildings" under both ordinances were defined as structures, "the use of which is clearly incidental to, customarily associated with, and related to the principal structure or use of the land."

[9] *Donalson v. Ga. Power & Light Co.*, 175 Ga. 462, 462 (1) (165 SE 440) (1932).

fathered in under the ordinances. See *Rockdale County v. Burdette*[10] ("[a] protected use is ordinarily defined as a use which lawfully existed prior to the enactment of a zoning ordinance . . . and which therefore may be maintained after the effective date of the ordinance . . . although it does not comply with the zoning restrictions applicable to the area") (punctuation omitted). The landowners point to evidence that numerous neighboring lots had so used the boat ramp for decades prior to the county's first zoning ordinance (enacted in 1972).

The fatal flaw to this argument is that the prior use of the boat ramp was under completely different circumstances: temporary, revocable permission given to family and friends. This prior use was not pursuant to irrevocable, perpetual easements given to landowners and their successors as a right appurtenant to their own lands. It was this latter use that was at issue in the present case, and it was undisputed that the pertinent easements were first created in March 2005, long after the 1984 ordinance — allowing only accessory uses — had been enacted. This argument accordingly must fail.

The trial court did not err in granting summary judgment to the county and its zoning administrator.

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge Marion T. Pope, Jr., concur.*

DECIDED SEPTEMBER 15, 2010.

*Langdale & Vallotton, Robert A. Plumb, Jr.,* for appellants.
*Elliott, Blackburn, Barnes & Gooding, Walter G. Elliott II,* for appellees.

---

[10] *Rockdale County v. Burdette,* 278 Ga. 755, 756 (604 SE2d 820) (2004).